## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

**SUSAN A. KLIMES,**

        Plaintiff,

v.

**CAROLYN W. COLVIN,**
Commissioner of Social
Security,[1]

        Defendant.

**No. 12-CV-4074-DEO**

**ORDER**

---

This matter is before the Court pursuant to Susan A. Klimes' (hereinafter Ms. Klimes) application for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401 et seq. Docket No. 9, Tr. 12, 22, 58, 125-28. On May 29, 2009, Ms. Klimes filed an application for supplemental security income benefits (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Docket No. 9, Tr. 12, 60, 129-36. Hearing was held on this matter on May 1, 2013. After listening to the parties' arguments, the Court took the issues under advisement and now enters the following.

---

[1] Ms. Klimes originally filed this case against Michael J. Astrue, Comm. of Social Security. On February 14, 2013, Carolyn W. Colvin became the Commissioner of SSA. The Court, therefore, substitutes Commissioner Colvin as the defendant in this action. Fed. R. Civ. P. 25(d)(1).

## I. FACTUAL BACKGROUND

Ms. Klimes was born on April 12, 1969, and was 39 at the time she claimed disability, and 41 at the time of the hearing. She is married and lives in Spencer, Iowa. Ms. Klimes has a limited educational history. She graduated from high school, completed a one year medical secretary course, and did a 75 hour course to become a nurse's aid. Docket No. 9, Tr. 30. Prior to claiming disability, she worked as a certified nurse's aide, medication aid, waitress, maid, and telemarketing sales representative. Docket No. 9, Tr. 30-33, 230.

On June 26, 2008, the day before plaintiff's alleged onset date, she presented to the emergency room with suicidal thoughts and superficial cuts on her arm. Docket No. 9, Tr. 339-40. In her Disability Report, plaintiff claimed that she became disabled on June 27, 2008, because of schizoaffective disorder, mental problems, depression, post-traumatic stress disorder, obsessive compulsive disorder, anxiety, Graves disease, and high blood pressure.

2

## II. PROCEDURAL HISTORY

The plaintiff's application for a period of disability and disability benefits under Title II and Title XVI were protectively filed on May 26, 2009, and for SSI on May 29, 2009. Docket No. 9, Tr. 58, 60, 125-36. To meet the requirements for "insured status," which is required for Title II benefits, an individual must have twenty quarters of coverage in a forty-quarter period ending with the first quarter of disability. See 42 U.S.C. §§ 416(i)(3)(B), 423(c)(1)(B); 20 C.F.R. § 404.130. Plaintiff's insured status expired on December 31, 2009. Docket No. 9, Tr. 28. Accordingly, to receive Title II benefits, plaintiff must show that she became disabled on or before her date last insured of December 31, 2009. To be eligible for SSI under Title XVI, plaintiff must establish that she was disabled while her application was pending. See 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330, 416.335. Plaintiff alleged that her disability began on or about June 27, 2008. Docket No. 9, Tr. 125.

After denial of plaintiff's initial application and request for reconsideration, the plaintiff requested hearing. A video hearing was held before the Administrative Law Judge

3

on December 17, 2010. The claimant appeared in Spencer, Iowa. Docket No. 9, Tr. 12. On January 19, 2011, the ALJ denied Ms. Klimes' claim. Following her denial, Ms. Klimes filed an appeal to the appeals council where she submitted additional evidence. The Appeals Council denied plaintiff's request for review on June 6, 2012, and Ms. Klimes filed the present Complaint on July 27, 2012.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of his past relevant work, and (5) determination

4

of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and lasts at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147

(8th Cir. 1982)(en banc)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A.. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th

6

Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Ms. Klimes did not suffer from a disability as contemplated by the Social Security Code. Specifically, the ALJ stated:

> The claimant meets the insured status requirements of the Social Security Act through December 31, 2009. The claimant has not engaged in substantial gainful activity since June 27, 2008, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.). The claimant has the following severe impairments: schizoaffective disorder, cyclothymia, anxiety disorder with a history of obsessive compulsive disorder, and cluster B traits (20 CFR 404.1520(c) and 416.920(c)). In addition to the severe impairments listed above, the claimant has Grave's disease, high blood pressure and is obese (Exhibits 15F, 18F, 29F). However, these medically determinable impairments cause no more than minimal limitations on her ability to perform basic work related activities and are therefore not severe. At the hearing, the claimant indicated no issues with her blood pressure or weight.

Docket No. 9, Tr. 15. The ALJ went on to say:

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),

7

404.1525,404.1526, 416.920(d), 416.925 and
416.926).   Although the claimant has
impairments that are considered to be
"severe", they are not attended, singly or
in combination, with the specific clinical
signs and diagnostic findings required to
meet or equal the requirements set forth in
Appendix 1, Subpart P, Regulations No.4.

The claimant's mental impairments,
considered singly and in combination, do
not meet or medically equal the criteria of
listings 12.04, 12.06, and 12.08.   In
making this finding, the undersigned has
considered whether the "paragraph B"
criteria are satisfied.   To satisfy the
"paragraph B" criteria, the mental
impairments must result in at least two of
the following:   marked restriction of
activities of daily living; marked
difficulties in maintaining social
functioning; marked difficulties in
maintaining concentration, persistence, or
pace; or repeated episodes of
decompensation, each of extended duration.
A marked limitation means more than
moderate but less than extreme.   Repeated
episodes of decompensation, each of
extended duration, means three episodes
within 1 year, or an average of once every
4 months, each lasting for at least 2
weeks.

Docket No. 9, Tr. 16.   The ALJ stated that, "[b]ecause the

claimant's mental impairments do not cause at least two

"marked" limitations or one "marked" limitation and "repeated"

episodes of decompensation, each of extended duration, the

"paragraph B" criteria are not satisfied." Docket No. 9, Tr.

8

18. The ALJ also considered the paragraph C criteria and found, "[i]n this case, the evidence fails to establish the presence of the "paragraph C" criteria. There are no repeated episodes of decompensation of extended duration, there is no evidence of a residual disease process that results in the requisite marginal adjustment inabilities, and there is no evidence of a one or more years' inability to function outside a highly supportive living arrangement. Additionally, there is no evidence of a complete inability to function independently outside the area of one's home." Docket No. 9, Tr. 18.

Based on the forgoing, the ALJ concluded that Ms. Klimes could return to work, stating:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can understand, remember and follow instructions. Her attention, concentration and pace may vary, but is adequate for most tasks. She can interact appropriately with coworkers and supervisors on at least a limited basis, essentially limiting her to brief and superficial contact. The claimant has adequate judgment to adjust to changes in the workplace with support.

9

Docket No. 9, Tr. 18. In making that finding, the ALJ gave less consideration to Ms. Klimes' testimony, stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. Even though medical records document the claimant's mental impairments, they do not support the extent of her claims.

Docket No. 9, Tr. 20. In making that finding, the ALJ noted that Ms. Klimes was only treated for mental health issues sporadically and that she occasionally stopped going to treatment. The ALJ noted a gap in Ms. Klimes' treatment history after her alleged onset date. Additionally, the ALJ stated that according to medical records, Ms. Klimes responded well to medication and her global assessment functioning increased. The ALJ concluded that Ms. Klimes' symptoms correspond to lapses in treatment and found that:

> It appears that the claimant's use of medications has, for the most part, been relatively effective in controlling her symptoms of anxiety and depression when she was taking them. Although she has alleged various side effects from these

10

medications, including headaches, dizziness and an upset stomach, the medical records do not corroborate those allegations. The claimant indicated that her physician seemed too busy to discuss these issues, but she noted that she only experiences these problems "once in a blue moon". As such, the alleged side effects are mild and would not interfere with the claimant's ability to perform work activities in any significant manner.

Docket No. 9, Tr. 21.

The ALJ also drew a negative inference from Ms. Klimes' work history, stating:

The claimant has a work history that is somewhat positive, but a number of inconsistencies and incongruities erode the probative weight of that history. She was able to generate annual earnings at substantial gainful activity levels from December of 1989 to June of 2004 as a nurse's aide (Exhibits 4D, 6D, 4E). The claimant tried working as a maid, waitress, and sales representative at a telemarketing firm after she left her last job as a nurse's aide, but she worked sporadically and only made minimal earnings in the four years leading up to her alleged onset date (testimony; Exhibits 4D, 6D, 1E). She told the undersigned that she could not handle most of these positions because of her mental condition, but records reveal that her treatment was rather sporadic prior to the alleged onset date (Exhibits 1F, 2F, 3F, 4F, 5F, 6F, 7F, 8F, 9F, 1OF). The claimant also told treatment providers that she quit her telemarketing job to help her boyfriend (who is now her husband) after he

11

broke his foot and injured his hand (Exhibit 9F). In addition, the claimant admitted, on numerous occasions, that she had not contacted Vocational Rehabilitation or employment services to determine her eligibility for retraining programs or fitness for work (Exhibit 1E, 3E, 8E, 11E, 14E, 17E).

Docket No. 9, Tr. 21. The ALJ was also persuaded that Ms. Klimes performed clinical assistance for her disabled husband, contrary to her testimony. The ALJ noted that Ms. Klimes does some housework and that Ms. Klimes lost her driver's license due to traffic violations. The ALJ dismissed statements from Ms. Klimes' husband based on the same rational, finding that the statements were not supported by the entire record.

Based on that, the ALJ found Ms. Klimes could work, stating:

The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). The claimant has past relevant work as a nurse aid. The vocational expert testified that the mental demands of the claimant's past relevant work as a nurse aid are precluded by the determined residual functional capacity. Although the claimant has also worked as a housekeeper at a motel in the past, that work is not relevant as she did not generate substantial earnings. Accordingly, the claimant is unable to perform past relevant work. The claimant was born on April 12, 1969 and was 39 years old, which is defined

12

as a younger individual age 18-49, on the
alleged disability onset date (20 CFR
404.1563 and 416.963). The claimant has at
least a high school education and is able
to communicate in English (20 CFR 404.1564
and 416.964). Transferability of job
skills is not material to the determination
of disability because using the
Medical-Vocational Rules as a framework
supports a finding that the claimant is
"not disabled," whether or not the claimant
has transferable job skills (See SSR 82-41
and 20 CFR Part 404, Subpart P, Appendix
2). Considering the claimant's age,
education, work experience, and residual
functional capacity, there are jobs that
exist in significant numbers in the
national economy that the claimant can
perform (20 CFR 404.1569, 404.1569(a),
416.969, and 416.969(a))...
The claimant's ability to perform work at
all exertional levels has been compromised
by nonexertional limitations. To determine
the extent to which these limitations erode
the occupational base of unskilled work at
all exertional levels, the Administrative
Law Judge asked the vocational expert
whether jobs exist in the national economy
for an individual with the claimant's age,
education, work experience, and residual
functional capacity. The vocational expert
testified that given all of these factors
the individual would be able to perform the
requirements of representative occupations
such as a packaging machine operator (DOT
920.665-010, light and unskilled), bander
and cellophaner machine operator (DOT
920.685-014, light and unskilled), and
wrapping machine operator (DOT 920.685-030,
light and unskilled), along with other
light and unskilled wrapping and packaging
occupations, with 30,000 jobs in the ten

13

state area of the upper Midwest, including
Iowa. Pursuant to SSR 00-4p, the
vocational expert's testimony is consistent
with the information contained in the
Dictionary of Occupational Titles. Based
on the testimony of the vocational expert,
the undersigned concludes that, considering
the claimant's age, education, work
experience, and residual functional
capacity, the claimant is capable of making
a successful adjustment to other work that
exists in significant numbers in the
national economy. A finding of "not
disabled" is therefore appropriate under
the framework of section 204.00 in the
Medical-Vocational Guidelines.

Docket No. 9, Tr. 22-24.

## III. STANDARD OF REVIEW

This Court's role in review of the ALJ's decision
requires a determination of whether the decision of the ALJ is
supported by substantial evidence on the record as a whole.
See 42 U.S.C. § 405(g); <u>Finch v. Astrue</u>, 547 F.3d 933, 935
(8th Cir. 2008). Substantial evidence is less than a
preponderance but enough that a reasonable mind might find it
adequate to support the conclusion in question. <u>Juszczyk v.
Astrue</u>, 542 F.3d 626, 631 (8th Cir. 2008) (citing <u>Kirby v.
Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must
consider both evidence that supports and detracts from the
ALJ's decision. <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th

14

Cir. 2006) (citing <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)).  In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision.  <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 589 (8th Cir. 2004).  The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice."  <u>Hacker v. Barnhart</u>, 459 F.3d 934, 936 (8th Cir. 2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error.  <u>Lauer v. Apfel</u>, 245 F.3d 700, 702 (8th Cir. 2001).  If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision.  <u>Neal v. Barnhart</u>, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

**IV. ISSUES**

In her brief, Ms. Klimes argues the vocational expert erred in determining that Ms. Klimes could obtain substantial gainful employment.  In making that argument, Ms. Klimes states that the vocational expert should have accepted her

testimony that she was incapable of accomplishing any unskilled work. Although not stated as such, this is essentially a credibility argument.[2] Additionally, Ms. Klimes argues that she has Cyclothymia, a mood disorder, and meets the 12.04 impairment criteria. The Court will consider these arguments below.[3]

## V. ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act]. The Act defines a disability as an:

> inability to engage in any substantial
> gainful activity by reason of any medically
> determinable physical or mental impairment

---

[2] In the Defendant's brief, the Defendant argues "Plaintiff does not dispute the ALJ's adverse credibility finding (Tr. 27). See Br. & Arg. of Pl. (Pl.'s Br.) 8-10." It is true that Ms. Klimes does not set out a credibility argument explicitly in her brief (which is unusual is a Social Security Appeal brief). However, a challenge to the ALJ's credibility determination is inherent in her other arguments.

[3] Although it is not completely clear from the Plaintiff's brief, this portion of the argument also seems to challenge the weight that the ALJ gave to the medical evidence. In the vast majority of Social Security appeal cases, these sections are set out independently in the Plaintiff's brief, with considerable attention given to each topic.

which can be expected to result in death or
which has lasted or can be expected to last
for a continuous period of not less than 12
months . . . .

42 U.S.C. § 423(d)(1)(A).

## A. Vocational Expert Opinion

The Plaintiff's first argument is that:

> The vocational expert... testified that
> plaintiff was unable to perform past
> relevant work because of the plaintiff's
> inability to interact socially even on a
> limited basis or tolerate brief superficial
> contact with other people including
> supervisors. (Tr. pp. 55-60). The
> Administrative Law Judge accepted this
> testimony for the purpose of finding that
> plaintiff was not capable of performing her
> past relevant work, and he should have
> followed the same reasoning with respect to
> the unskilled work that he determined
> plaintiff was capable of performing. That
> is because SSR 85-15 states that a
> substantial loss of ability to meet any of
> these basic work-related activities would
> severely limit the potential occupational
> base. The basic work activity the ruling
> is discussing includes the ability to
> respond appropriately to supervision,
> coworkers, and usual work situations and
> deal with changes in the routine work
> setting. These are things the vocational
> expert concluded plaintiff was not capable
> of doing based upon plaintiff's testimony
> and the Mental Residual Functional Capacity
> Assessment(s) in the record.

Docket No. 13, p. 9. The Defendant in turn argues:

Because the ALJ found plaintiff could not perform her past relevant work, the burden shifted to the Commissioner at step five to show that plaintiff could perform other work existing in significant numbers in the national economy (Tr. 21-22). See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The ALJ met this burden by questioning a vocational expert about a hypothetical claimant with plaintiff's RFC (Tr. 21-22, 49-51). See Cox v. Astrue, 495 F.3d 614, 620 (8th Cir. 2007) (finding a vocational expert's response to a complete and correctly-phrased hypothetical provides substantial evidence for the ALJ's step-five conclusion). The ALJ specified that the hypothetical claimant could understand, remember, and follow instructions (Tr. 49, 423). The claimant's attention, concentration, and pace might vary but were adequate for most tasks (Tr. 49, 423). She could interact appropriately with co-workers and supervisors on at least a limited basis; in other words, she could have brief, superficial contact with other people (Tr. 49, 423). Further, the hypothetical claimant had adequate judgment to adjust to changes in the workplace with support (Tr. 49, 423). The ALJ's hypothetical questions were complete because they conveyed all of the limitations he found credible. See Harvey, 368 F.3d at 1016 ("The fact that the ALJ omitted from his hypothetical questions those aspects of [the claimant's] subjective complaints that the ALJ considered non-credible does not render the questions faulty.").

Docket No. 14, p. 26-27.

Under well established principals, hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. Trimble v. Colvin, C12-2081, 2013 WL 4647370 (N.D. Iowa Aug. 29, 2013). "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001) (citing Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. Goose v. Apfel, 238 F.3d 981, 985 (8th Cir. 2001). As stated in Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999), "[a] hypothetical question is sufficient if it sets forth the impairments which are accepted as true by the ALJ." See also Davis v. Shalala, 31 F.3d 753, 755 (8th Cir. 1994).

As the Court noted above, the Plaintiff styles her first argument as an attack on the vocational expert's testimony. However, the substance of the argument is really about the Plaintiff's credibility, because, had the ALJ not given the Plaintiff's testimony less weight, the vocational expert would

not have been able to disregard it. Accordingly, the Court must first examine the ALJ's credibility determination.

"In order to assess a claimant's subjective complaints, the ALJ must make a credibility determination by considering the claimant's daily activities; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions." Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. An ALJ must have sufficient justification for doubting a claimant's credibility. See Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010) (quoting Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007)). However, "[a] disability claimant's subjective complaints of pain may be discounted if inconsistencies in the record as a whole bring those complaints into question." Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006).

Additionally, courts have repeatedly stated that the "limited ability to complete light housework and short errands does not mean [a claimant] has 'the ability to perform the

20

requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Tilley v. Astrue, 580 F.3d 675, 682 (8th Cir. 2009) citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc). Additionally, Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005). Finally, the inability to afford medication cannot be used as a basis for a denial of benefits. Tang v. Apfel, 205 F.3d 1084, 1086 (8th Cir. 2000).

As stated above, the ALJ may only discount the plaintiff's complaints if they are inconsistent with the record as a whole. In this case, the Court is persuaded that Ms. Klimes' testimony was supported by and consistent with the record as a whole. Ms. Klimes testified that, "I don't think I would have been able to work anything or anywhere" after her disability onset date. Docket No. 9, Tr. 40. She based her statement on her depression and concentration issues caused by her various mental disorders. Docket No. 9, Tr. 41. Ms. Klimes went on to discuss her Graves Disease and stated, "if it was only the Graves Disease by itself...I probably might be

able to work, but with all my underlying mental health issues going along with it, I do not believe I'm able to work." Docket No. 9, Tr. 42.

As set out in the Plaintiff's brief, Ms. Klimes has a long history of treating for a variety of mental illness. Ms. Klimes alleges an onset of disability in July of 2008. However, her history of severe mental health issues predate her alleged onset date. For example, on October 28, 2003, psychiatrist F. Diana Udrea examined Ms. Klimes. Dr. Udrea diagnosed major depressive disorder. Dr. Udrea recommended both medication and psychotherapy to treat Ms. Klimes' illness. On March 15, 2007, Ms. Klimes was examined by Psychiatrist Barbara McCabe. Dr. McCabe diagnosed her with Major Depressive Disorder with a GAF score of 50. Dr. McCabe opined, "[b]ased on [Ms. Klimes] behavior and presentation here today she does say some sort of bizarre things that if she was in a work situation with coworkers they might find her rather offensive... She also has a pretty limited attention to her grooming and hygiene." Docket No. 9, Tr. 278. Ms. Klimes regularly followed up with these issues through 2006 and 2007. Docket No. 9, Tr. 280-292, 303-304. On February 25, 2008,

Nurse Howe increased Ms. Klimes' medication and noted that, "I am going to touch base with community support to make sure they are looking in on her routinely." Docket No. 9, Tr. 310. Ms. Klimes also has a history of suicidal ideation. See for example, Docket No. 9, Tr. 326. Although these instances predate Ms. Klimes' alleged disability, they are important history of the illnesses and issues which have led to Ms. Klimes' disability claims.

Ms. Klimes' varied issues persisted after the alleged disability date. Ms. Klimes regularly saw her treating physician, Dr. Segreto, reporting depression and anxiety issues. See, for example, Docket No. 9, Tr. 419-20. On August 18, 2009, she was examined by consulting expert Scott Shafer. Although Dr. Shafer opined that Ms. Klimes could work, he did think suffered from a severe mental impairment and that her symptoms are only partially controlled by medication. Docket No. 9, Tr. 423. Dr. Shafer also noted that she could only interact appropriately with co-workers on a limited basis. Id. Throughout this period, Ms. Klimes' medical team would continually adjust her medication to control her symptoms. Docket No. 9, Tr. 441, 513-14, 532.

23

Ms. Klimes also suffers from Graves Disease, which affected her thyroid and caused uncontrolled weight fluctuations. See Plaintiff's Brief, Docket No. 13, p. 5-8, for an extensive discussion of the thyroid issue.

Additionally, the medical record is supported by the statements of Ms. Klimes' family members. Specifically, Ms. Klimes' husband stated that, "I believe [Ms. Klimes] mental illnesses prevent her from working. She cannot deal with the stress, directions/orders, and mostly getting along with others..." Docket No. 9, Tr. 244.

The foregoing medical history and family statements support Ms. Klimes' alleged disability. Ms. Klimes has consistently complained of depression and anxiety for nearly a decade, and no doctor has ever seriously disputed the fact that she suffers from these issues. The ALJ pointed to instances in the record where Ms. Klimes appeared to respond to treatment. However, the mere fact that, occasionally, Ms. Klimes responds well to medication does not prove that she is not disabled. Additionally, the ALJ drew a negative inference from the fact that Ms. Klimes had lapses in her treatment. However, it is clear from the record that both Ms. Klimes'

mental illness and her financial situation negatively affected her treatment at times. Ms. Klimes specifically discussed the fact that financial concerns prevented her from getting all the treatment she would like. See, for example, Docket No. 9, Tr. 45. It is well established that a plaintiff's financial issues should not be held against them as it concerns affording medication.

Accordingly, substantial evidence does not support the ALJ's decision to give little weight to Ms. Klimes' testimony. In fact, Ms. Klimes' statements regarding her disability are substantially supported by the medical record in this case. The ALJ's determination was not supported by substantial evidence and was an error. Because Ms. Klimes testified credibility about her disability, and that testimony was supported by the medical evidence, those limitations should have been incorporated into the question posed to the vocational expert.

## B.  12.04  Impairment Criteria

Second, the Plaintiff argues that Ms. Klimes has a listed impairment under 12.04. Specifically, Ms Klimes argues:

> Cyclothymia is a mood disorder.[fn]
> Plaintiff does, in fact, meet or exceed

25

criteria in the Adult Listing of
Impairments under 12.04 –
Affective Disorders. Under 12.04, the plaintiff
meets at least 4 of the criteria in 12.04
A.1. including appetite disturbance with
change in weight (Tr. pp. 329, 385, 440);
sleep disturbance (Tr. pp. 304, 328, 419);
psychomotor agitation or retardation (Tr.
pp. 339-341); decreased energy (Tr. p.
419); difficulty concentrating or thinking
(Tr. pp. 40, 41, 49); and thoughts of
suicide (Tr. pp. 326, 339). The record
also reflects that plaintiff experiences
marked difficulty in maintaining social
functioning (Tr. pp. 49, 50, 278, 285, 294,
358-361, 421-424) and marked difficulty
maintaining concentration, persistence, or
pace (Tr. pp. 31, 40, 41, 49, 285). This
satisfies at least two of the four criteria
under 12.04 B. of the Listing of
Impairments. [fn] Cyclothymia
(si''klo-thim'e-ah) a temperament
characterized by cyclic alternations of
mood between elation and depression, often
associated with the pyknic type of body
build; called also cyclophrenia. Dorland's
Illustrated Medical Dictionary,
Twenty-fifth Edition.

Docket No. 13, p. 9-10. The Defendant responds that:

Plaintiff argues that the ALJ erred in
finding that she did not meet Listing
12.04. Pl.'s Br. at 9-10. But plaintiff
relies primarily upon her own subjective
statements, which the ALJ properly
determined were not fully credible.
Contrary to plaintiff's argument, the ALJ's
finding that plaintiff did not meet a
listed impairment is supported by
substantial evidence. The listings specify
the criteria for each impairment that is

considered presumptively disabling. See 20
C.F.R. Pt. 404, Subpt. P, App. 1. The
listings for mental impairments generally
consist of a set of medical findings that
substantiate the mental disorder
("Paragraph A criteria") and a set of
impairment-related functional limitations
that are incompatible with the ability to
work ("Paragraph B criteria"). Id. §
12.00A; see Davis v. Astrue, 545 F. Supp.
2d 973, 983-84 (D. Neb. 2008). The
Paragraph B criteria consist of four
functional areas: activities of daily
living; social functioning; concentration,
persistence, or pace; and episodes of
decompensation. 20 C.F.R. Pt. 404, Subpt.
P, App. 1, § 12.00C. To meet listing
12.04, plaintiff had to demonstrate that
she met the Paragraph A criteria, and
exhibited marked restrictions in two of the
Paragraph B criteria. Id. § 12.04; see
also Carlson v. Astrue, 604 F.3d 589, 593
(8th Cir. 2010) (stating that plaintiff has
the burden to establish an impairment that
met all listing criteria).

Here, the ALJ found that plaintiff had mild
limitations in activities of daily living;
moderate difficulties in maintaining social
functioning; mild restrictions in
maintaining concentration, persistence, or
pace; and no episodes of decompensation
(Tr. 15-17). Plaintiff challenges only the
ALJ's findings as to her ability to
maintain social functioning, and
concentration, persistence, or pace. Pl.'s
Br. at 10. However, the ALJ's decision is
supported by substantial evidence on the
record as a whole.

Docket No. 14, p. 18-19.

The Defendant is correct that Ms. Klimes' argument is based largely on her subjective complaints. However, that is not a fatal flaw for a number of reasons. First, Courts have long recognized that almost all medical diagnosis begin with a patient's complaints. See Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997), stating that "[a] patient's report of complaints, or history, is an essential diagnostic tool;" and Brand v. Secretary of Dept. of HEW, 623 F.2d 523, 526 (8th Cir. 1980), stating that [a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints." This principal is especially true regarding physiological illnesses. Accordingly, Ms. Klimes' subjective complaints are an important factor to be considered in determining if she has a listed impairment. This is especially true in light of the Court's conclusion in the previous section that her complaints are credible and well supported in the record.

Additionally, as detailed above, Ms. Klimes' subjective complaints are supported in this case by the medical records. As the Court's citations in the previous section demonstrate, the record is replete with instances of Ms. Klimes receiving

28

medical treatment for mental health issues. Accordingly,
substantial evidence in the record supports the Plaintiff's
argument that she has had appetite disturbance with change in
weight, Docket No. 9, Tr. 329, 385, 440; sleep disturbance
Docket No. 9, Tr. 304, 328, 419; psychomotor agitation or
retardation Docket No. 9, Tr. 339-341; decreased energy,
Docket No. 9, Tr. 419; difficulty concentrating or thinking,
Docket No. 9, Tr. 40, 41, 49; and thoughts of suicide, Docket
No. 9, Tr. 326, 339. The ALJ's determination that Ms. Klimes
does not have a listed impairment is not supported by
substantial evidence and was an error.

## VI. CONCLUSION

It is clear the ALJ erred in the two areas discussed
above. The question thus becomes whether this Court should
remand for further consideration or solely for the purpose of
awarding benefits.

This Court has the authority to reverse a decision of the
Commissioner, "with or without remanding the cause for
rehearing," but the Eighth Circuit has held that a remand for
award of benefits is appropriate only where "the record
'overwhelmingly supports'" a finding of disability. 42 U.S.C.

405(g); <u>Buckner v. Apfel</u>, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing <u>Thompson v. Sullivan</u>, 957 F.2d 611, 614 (8th Cir. 1992).

The Court has considered the entire record, the parties' briefs, and the arguments presented at hearing. When the medical evidence is considered along with Ms. Klimes' credible testimony, this Court is persuaded that the overwhelming evidence supports a finding of disability.

**Therefore, the decision of the ALJ is reversed and remanded solely for the calculation of benefits from Plaintiff's claimed onset of disability.**

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if Klimes' attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 30th day of September, 2013.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa